**REDACTED**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 08-**39** |
| GEORGE SETTING, | : |
| Defendant. | : |

### INDICTMENT

The Grand Jury for the District of Delaware charges that:

*Introduction*

1.  At all times relevant hereto, George Setting ("SETTING") was the Security Manager for Company A, a provider of cable television services.

2.  At all times relevant hereto, J.O. and M.K. were also employed by Company A and worked as Field Audit Investigators. Both J.O. and M.K. reported directly to SETTING.

3.  In connection with their responsibilities, SETTING, J.O., and M.K. could request company funds to cover certain expenses associated with investigations regarding theft of cable services and use of unlawful cable equipment.

4.  At all times relevant hereto, J.O. and M.K. made any requests for funds to SETTING. SETTING would, in turn, request the funds from the company on behalf of J.O. and M.K.

### COUNTS ONE through NINE

*Scheme or Artifice to Defraud*

5.  Beginning on or about March 11, 2003, and continuing through on or about

October 14, 2003, SETTING made or caused to be made check requests to Company A, either on his own behalf or on behalf of other Company A employees. While SETTING represented to Company A that these checks were for legitimate business expenses, they were in fact for SETTING's personal benefit.

6. In furtherance of the scheme or artifice to defraud, SETTING would send an e-mail check request to the Company A Accounts Receivable office in New Castle, Delaware. In his e-mail, SETTING would identify the amount needed, the purported reason for the funds, and the name of the payee.

7. After receiving SETTING's e-mail, the Accounts Receivable office would generate a check request form. This request would then be forwarded to a Company A office located in Oaks, Pennsylvania. When issued, the checks would be returned to the Accounts Receivable office in New Castle and would either be picked up or delivered to SETTING in Delaware.

*Charging Paragraph*

8. On or about the dates set forth below, in the District of Delaware, GEORGE SETTING, defendant herein, having devised and intending to devise a scheme and artifice to defraud, as described in paragraphs 1 through 7 above, incorporated herein by reference, and for the purposes of executing such scheme and artifice to defraud, did knowingly transmit or cause to be transmitted by means of a wire communication in interstate commerce, e-mails in furtherance of the scheme and artifice to defraud, to wit:

**Count 1:** On or about March 11, 2003, an e-mail, requesting two checks be issued totaling $3900;

**Count 2:** On or about April 16, 2003, an e-mail, requesting a check be issued in the

amount of $2560;

**Count 3:** On or about May 21, 2003, an e-mail, requesting two checks be issued totaling $2600;

**Count 4:** On or about June 16, 2003, an e-mail, requesting two checks be issued totaling $2200;

**Count 5:** On or about July 14, 2003, an e-mail, requesting two checks be issued totaling $2480;

**Count 6:** On or about August 5, 2003, an e-mail, requesting a check be issued in the amount of $480;

**Count 7:** On or about August 23, 2003, an e-mail, requesting three checks be issued totaling $2500;

**Count 8:** On or about September 12, 2003, an e-mail, requesting a check be issued in the amount of $3000;

**Count 9:** On or about October 7, 2003, an e-mail, requesting a check be issued in the amount of $2800;

All in violation of Title 18 United States Code, Section 1343.

## COUNT TEN

*Introduction*

9. Paragraphs 1 through 4 are incorporated herein by reference.

10. At all times material to this Indictment, Mellon Bank, N.A. was a was a federally insured financial institution, the deposits of which are insured by the Federal Deposit Insurance Corporation, or FDIC.

*Scheme or Artifice to Defraud*

11.     Paragraphs 5 through 8 above are incorporated herein by reference. It was further part of the scheme and artifice to defraud that SETTING would request Company A issue checks made payable to third parties, including M.K, when M.K., in fact, never requested these funds and such funds were not for an authorized business purpose.

12.     Company A issued checks as a result of these fraudulent requests, payable to M.K. and were drawn against Company A's Mellon Bank N.A. account ending in 0437 (the "0437 account").

13.     It was further a part of the scheme that SETTING would receive these checks and forge M.K.'s endorsement, without M.K.'s knowledge or permission. SETTING then added his own endorsement and cashed these checks.

14.     In furtherance of the scheme and artifice to defraud, on or about June 7, 2001, SETTING obtained check number xxxxx2573, drawn against the 0437 account and made payable to M.K. in the amount of $500. On or about July 3, 2001, SETTING obtained check number xxxxx1787, drawn against the 0437 account and made payable to M.K. in the amount of $840.

*Charging Paragraph*

15.     From in or around June 2001 through in or around July 2001, in the District of Delaware, GEORGE SETTING, the defendant herein, did knowingly execute and attempt to execute a scheme and artifice to defraud Mellon Bank N.A., a federally insured financial institution, and to obtain the moneys, funds, and other property under the custody and control of Mellon Bank N.A. by means of false and fraudulent pretenses, representations, and promises, as

4

described more fully in paragraphs 9-12 above, incorporated herein by reference.

All in violation of Title 18, United States Code, Section 1344.

### COUNT ELEVEN

*Introduction*

16. Paragraphs 1 through 4 are incorporated herein by reference.

17. At all times material to this Indictment, Bank One, N.A. was a federally insured financial institution, the deposits of which are insured by the Federal Deposit Insurance Corporation, or FDIC.

18. As a part of their job responsibilities, J.O. and M.K. were responsible for executing "door knocks." These "door knocks" involved approaching residences where an illegal cable hookup had been observed and questioning the occupants about the illegal cable and source of the hookup.

19. On some occasions when M.K. would perform "door knocks" in the City of Wilmington, he was accompanied by M.C.

*Scheme or Artifice to Defraud*

20. In or around November 2003, at SETTING's direction, M.C. completed paperwork to become a vendor for Company A. As a vendor, M.C. was eligible to receive checks directly from Company A in response to a check request or submission of invoice for services.

21. M.C., however, at all times relevant hereto, did not personally submit any requests for payment or invoices to Company A. After working with M.C., M.K. would orally report to SETTING the number of hours M.C. worked in a given week. SETTING would then submit a request for payment on M.C.'s behalf from Company A.

22. In order to obtain these payments, SETTING would submit an invoice for the services purportedly performed by M.C. At times SETTING created these invoices himself, and at other times he directed J.O. to create these invoices.

23. It was a further part of the scheme and artifice to defraud that SETTING would submit fraudulent invoices relating to M.C. in order to obtain payments based on grossly inflated invoices which did not accurately reflect the services rendered by M.C.

24. Based upon these false invoices, Company A issued checks made payable to M.C. that were drawn against Company A's Bank One N.A. account ending in 9333 (the "9333 account").

25. It was further a part of the scheme and artifice to defraud that SETTING would personally collect the M.C. checks from the Accounts Receivable office.

26. It was further a part of the scheme and artifice to defraud that after picking up the checks made payable to M.C., SETTING would then forge or cause to be forged, M.C.'s endorsement on the checks, after which SETTING would cash the checks, or direct J.O. to cash the checks.

27. Once the check was cashed, SETTING would then deliver, or arrange for the delivery, of cash payments to M.C. for the actual hours he worked, which were far fewer than the hours for which the check had been issued. SETTING kept the remaining cash.

28. In furtherance of the scheme or artifice to defraud, on or about the dates set forth below, SETTING obtained checks drawn against the 9333 account and made payable to M.C., as described more fully below, to wit:

   a. On or about March 31, 2004, SETTING obtained check number xxxxx2955,

in the amount of $2270.

  b. On or about April 29, 2004, SETTING obtained check number xxxxx4939, in the amount of $1720.

  c. On or about August 4, 2004, SETTING obtained check number xxxxx9020 in the amount of $2440.

  d. On or about August 30, 2004, SETTING obtained check number xxxxx6357, in the amount of $1320.

  e. On or about September 27, 2004, SETTING obtained check number xxxxx6273, in the amount of $1280.

  f. On or about October 18, 2004, SETTING obtained check number xxxxx3905, in the amount of $2120.

  g. On or about November 8, 2004, SETTING obtained check number xxxxx1430, in the amount of $2480.

  h. On or about December 15, 2004, SETTING obtained check number xxxxx5969, in the amount of $2280.

  i. On or about January 12, 2005, SETTING obtained check number xxxxx4300, in the amount of $1880.

  j. On or about February 11, 2005, SETTING obtained check number xxxxx4583, in the amount of $2480.

  k. On or about April 18, 2005, SETTING obtained check number xxxxx9961, in the amount of $1840.

  l. On or about April 29, 2005, SETTING obtained check number xxxxx4309, in

the amount of $2040.

  m. On or about May 20, 2005, SETTING obtained check number xxxxx1709, in the amount of $2120.

  n. On or about June 10, 2005, SETTING obtained check number xxxxx8291, in the amount of $2300.

  o. On or about June 27, 2005, SETTING obtained check number xxxxx4121, in the amount of $2080.

  p. On or about July 27, 2005, SETTING obtained check number xxxxx4072, in the amount of $2560.

  q. On or about August 29, 2005, SETTING obtained check number xxxxx4795, in the amount of $2080.

  r. On or about September 14, 2005, SETTING obtained check number xxxxx0092, in the amount of $960.

  s. On or about October 14, 2005, SETTING obtained check number xxxxx9923, in the amount of $960.

*Charging Paragraph*

  29. In or around March 2004 through in or around October 2005, in the District of Delaware, GEORGE SETTING, the defendant herein, did knowingly execute and attempt to execute a scheme and artifice to defraud Bank One N.A., a federally insured financial institution, and to obtain the moneys, funds, and other property under the custody and control of Bank One N.A. by means of false and fraudulent pretenses, representations, and promises, as described more fully in paragraphs 16 through 28 above, incorporated herein by reference.

All in violation of Title 18, United States Code, Sections 1344 and 2.

A TRUE BILL

COLM F. CONNOLLY
UNITED STATES ATTORNEY

By: _____
Lesley F. Wolf
Assistant U.S. Attorney

Dated: March 4, 2008